UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br>    v.<br>$128,760 IN UNITED STATES CURRENCY,<br>        Defendant. | Case No. 13-cv-01554-JCS<br><br>**ORDER GRANTING UNITED STATES OF AMERICA'S MOTION FOR DEFAULT JUDGMENT**<br><br>**Dkt. No. 12** |

## I. INTRODUCTION

This is a judicial forfeiture action brought under 21 U.S.C. § 881(a)(6) involving the seizure of Defendant $128,760 in United States currency. The clerk has entered default, and the United States now brings a Motion for Default Judgment ("Motion"). A hearing on the Motion was held on August 23, 2013 at 9:30 a.m. For the reasons stated below, and good cause appearing, the Motion is GRANTED.[1]

## II. BACKGROUND

### A. Factual Allegations

On December 6, 2012, at approximately 2:51 p.m., agents from the Drug Enforcement Administration ("DEA") initiated surveillance at San Francisco International Airport ("SFO"), Gate #75, in anticipation of the arrival of a United Airlines Flight #337 from Newark, New Jersey. Compl. ¶ 9. The DEA agents had information that Ariel Mota paid $865 with a credit card for a

---

[1] The United States has consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 686(c). *See* Dkt. No. 6. No other party appeared. In an *in rem* forfeiture proceeding, a party that fails to comply with the applicable filing requirements is precluded from standing as a "party" to the action, making it unnecessary to obtain the individual's consent to proceed before a magistrate judge. *United States v. 5145 N. Golden State Blvd.*, 135 F.3d 1312, 1317 (9th Cir. 1998). Therefore, the undersigned magistrate judge may enter judgment in this case.

1    one-way ticket on United Airlines the night before, and later checked in with two pieces of
2    luggage. *Id*. The agents saw an individual fitting Mota's description exit the plane and proceed to
3    the baggage claim area to carousel #3 for United Airlines. *Id*. Mota was identified through a
4    computer description and photograph, which matched his date of birth as shown in his passenger
5    record. *Id*.
6        At the baggage claim area, the agents observed Mota stay away from carousel #3 where his
7    luggage would be arriving. Compl. ¶ 10. Mota looked around the area in a nervous manner. *Id*.
8    Mota then removed a piece of luggage from carousel #3 and retrieved a cylindrical tube from the
9    odd-sized baggage-claim area. *Id*. Inside the tube was a fishing pole. *Id.*
10       Two of the agents approached Mota to conduct a consensual encounter as he was walking
11   toward the escalator between carousels #3 and #4. Compl. ¶ 11. The agents identified themselves
12   as DEA Task Force Agents by displaying their credentials as they approached Mota from the side
13   without blocking his path of travel, and spoke to him in calm, normal voices. *Id*. One of the
14   agents explained to Mota that he was not under arrest, which Mota understood. *Id*. Mota
15   identified himself by showing the agents his New Jersey Department of Motor Vehicles
16   identification, and confirmed that he had arrived at SFO from Newark, New Jersey. *Id*. Mota told
17   the agents he was in California to go fishing for one day and then he planned to return to New
18   Jersey. *Id*. The same DEA agent explained to Mota that he was not under arrest, to which Mota
19   said he understood. *Id*.
20       The agent asked Mota if he was carrying drugs or a large amount of United States
21   currency. Mota denied having drugs, but admitted having a large amount of money. Compl. ¶ 12.
22   Mota did not know exactly how much he had, but thought he had about "one hundred thousand."
23   *Id*. When the agents asked Mota if they could search his bags, Mota said: "go ahead." Mota
24   unlocked a combination lock on his checked suitcase so the agents could look inside. *Id*. Mota
25   told the agents he was currently unemployed and that his most recent job was at Blockbuster. *Id*.
26       During the search of Mota's bags, including his backpack, the agents found a number of
27   yellow-padded envelopes, which contained large amounts of U.S. currency in various
28   denominations. Compl. ¶ 13. Currency was also found in a brown box wrapped in newspaper.

2

The United States alleges that the packaging of the currency was consistent with how those involved in drug trafficking package currency. *Id*. The total amount of U.S. currency, later counted by the Bank of America, was $126,760. *Id*. There were a total of 5,100 bills consisting of the following denominations: $100 x 261; $50 x 196; $20 x 4,643. *Id*. This currency is the Defendant in this action.

Mota told the agents that the currency represented his life savings over the last 10-15 years, which he obtained from various jobs. Compl. ¶ 14. Mota said he kept this currency in his drawer at home in New Jersey where he lived with his mother, but his mother did not know about the money. *Id*. Mota also said that he had not filed an income tax return for 2011. *Id*.

When the agents asked Mota why he would bring such a large amount of money to California to go fishing for one day, Mota said he just wanted the money to be with him and that he did not trust banks. Compl. ¶ 15. Mota planned to take the money to a bank in California to be counted, and did not give a reason for why he had not brought the currency to a bank in New Jersey to be counted. *Id*. The agents told Mota that people involved in drug trafficking bring large amounts of currency to California. *Id.* Mota said he was not involved in any type of drug dealing, but did say that he smoked marijuana near the money the night before while at home. *Id*. Mota was adamant that Defendant $128,760 belonged to him and the source of it was the various jobs he had held over many years. *Id*. The agents could smell the odor of marijuana on the money. *Id*.

The agents placed Defendant $128,760 in three DEA self-sealing evidence bags and sealed the bags in Mota's presence. Compl. ¶ 16. The agents provided Mota with a United States Department of Justice – Drug Enforcement Administration Receipt for Cash or Other Items for the seizure of the as-of-then undetermined amount of U.S. currency. *Id*. The agents also explained the asset forfeiture procedure to Mota, who appeared to understand, and provided his contact information to Mota. *Id*. Mota did not have any other questions and left the airport without incident. *Id*. The agents left Mota with approximately $800 that he had in his pocket for travel money. *Id.*

At approximately 3:10 p.m., one of the agents placed the three DEA self-sealing evidence

3

1 bags containing Defendant $128,760 among a number of pieces of luggage near the United

2 Airlines baggage carousel #1. Compl. ¶ 17. The other agent then brought a certified, narcotics

3 detection canine, "Jackson," to conduct a systematic search of the area using an off leash

4 technique. *Id*. When Jackson came upon the three DEA self-sealing evidence bags, Jackson

5 alerted by biting and scratching at them. *Id*. This indicated to the agents that the odor of the

6 narcotics was emanating from the Defendant $128,760. *Id*.

7 Jackson is a Golden Retriever, who is certified to detect heroin, cocaine, marijuana,

8 hashish and methamphetamine. Compl. ¶ 18. One of the agents had handled and trained Jackson

9 since December 1, 2010. *Id*. Jackson has successfully located drugs over 500 times in connection

10 with training and employment. *Id*.

11 The agents took the three self-sealing evidence bags to the Bank of America at SFO, where

12 the currency was counted. Compl. ¶ 19. One of the agents examined a random sample of bills

13 and did not find one dated earlier than 2009. *Id*. Bank of America provided the agents with a

14 receipt noting the denominations of the currency and converted the currency into a cashier's check

15 #434733938, in the amount of $128,760.00, payable to the United States Marshal's Service. *Id*.

16 After the DEA gave notice of the seizure of Defendant $128,760, Mota, through his

17 counsel Jon Rory Skolnick, submitted a sworn administrative claim which the DEA received on or

18 about January 31, 2013. Compl. ¶ 5. Under penalty of perjury, Mota claimed that he was the

19 owner of the Defendant currency and that, without his consent, the agents "illegally" searched his

20 suitcase before seizing the "$130,000" in currency. *Id*.

21 **B.   Claim for Relief**

22 The United States filed this action under 21 U.S.C. § 881(a)(6), which provides, in relevant

23 part, that property "subject to forfeiture" includes "[a]ll moneys … intended to be furnished by

24 any person in exchange for a controlled substance or listed chemical in violation of this

25 subchapter[.]" 21 U.S.C. § 881(a)(6). The United States alleges that the totality of following

26 circumstances shows that Defendant $128,760 is involved in drug trafficking and is therefore

27 subject to forfeiture:

28 (1) inconsistencies between Mota's sworn, administrative claim and the statements he

4

       made to the agents such as telling them he had about "one hundred thousand" and later claiming he had "$130,000," as well as Mota's giving consent to search his luggage which he unlocked for the agents, but later denying he gave consent;

(2) Mota's failure to identify a legitimate source of Defendant $128,760;

(3) Mota's implausible claim that, while unemployed, he came from New Jersey with his life savings earned over the past 10-15 years for a one-day fishing trip;

(4) the random check of Defendant $128,760 which revealed no bills dated earlier than 2009;

(5) the fact that people who are not involved in drug trafficking do not travel with large amounts of currency because more secure, inexpensive methods of transferring funds are readily available;

(6) the fact that drug traffickers routinely deal in large amounts of cash, while shunning legitimate payment methods and financial institutions which create a paper trail connecting them with their criminal activities;

(7) the fact that drug traffickers have to transport large amounts of currency to source cities to pay for their illegal inventories;

(8) the fact that San Francisco is a source city for the purchase of illegal controlled substances, including marijuana;

(9) Mota's last minute purchase of a one-way ticket to a source city;

(10) Mota's packaging of the currency and its denominations, including 4,643 in $20 bills, which are consistent with drug trafficking and evidence of street sales;

(11) the fact that agents identified the odor of marijuana on defendant, and that Jackson, a trained narcotics detection canine, alerted to Defendant $128,760.

**C.    Service of Process & Notice**

The United States filed this action on April 5, 2013. On April 9, 2013, the United States gave notice of this action directly to Mota and his counsel, Jon Rory Skolnick, by serving a copy of the Complaint for Forfeiture, the Notice of Forfeiture Action, the Warrant of Arrest of Property *In Rem*, and related documents, to their last known addresses. *See* Dkt. No. 5 (Certificate of

1 Service); *see also* Dkt. No. 2 (Notice of Forfeiture Action); Dkt. No. 3 (Warrant of Arrest of
2 Property *In Rem*). The United States also published notice of this forfeiture action on an official
3 government website (www.forfeiture.gov) for at least 30 consecutive days, beginning on April 10,
4 2013. *See* Dkt. No. 8 (Declaration of Publication).

5       While Mota filed an administrative claim asserting his entitlement to Defendant $128,760,
6 Mota did not file a verified claim as required in this forfeiture action. No one appeared to file a
7 verified claim to Defendant $128,760 or otherwise responded to this action. *See* Dkt. No. 16
8 (Declaration of Patricia J. Kenney in Support of the Motion of the United States for a Default
9 Judgment) ¶ 7. The clerk entered default on July 2, 2013. *See* Dkt. No. 10.

## III. DISCUSSION

### A. Jurisdiction

The court has jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1355(a), which vests district courts with original jurisdiction in "any action or proceeding for the ... enforcement of any ... forfeiture ... incurred under any Act of Congress." *See* 28 U.S.C. § 1355(a).

### B. Legal Standard

Forfeiture is "harsh and oppressive" and thus, is "not favored by the courts." *See U.S. v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1069 (9th Cir. 1994). The Ninth Circuit is "particularly wary of civil forfeiture statutes" because they "impose 'quasi-criminal' penalties" but do not provide property owners with the degree of procedural protections provided to criminal defendants. *See id.* at 1068; *U.S. v. Marlof*, 173 F.3d 1213, 1217 (9th Cir.1999) (quoting *$191,000.00 in U.S. Currency,* 16 F.3d at 1068)). Accordingly, strict adherence to procedural rules is paramount in civil forfeiture proceedings. *See Marlof*, 173 F.3d at 1217 (denying forfeiture where government "erred" by failing to provide due notice to property owner); *$191,910.00 in U.S. Currency,* 16 F.3d at 1068–69 (strictly construing currency forfeiture provisions of 19 U.S.C. § 615 against government and holding that "the burden on the government to adhere to procedural rules should be heavier than on claimants").

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, a court may enter default judgment where the clerk, under Rule 55(a), has previously entered the party's default

1 based upon failure to plead or otherwise defend the action. Fed.R.Civ.P. 55(b). Once a party's
2 default has been entered, the factual allegations of the complaint, except those concerning
3 damages, are deemed to have been admitted by the non-responding party. Fed.R.Civ.P. 8(b)(6);
4 *see also Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law
5 is that upon default the factual allegations of the complaint, except those relating to the amount of
6 damages, will be taken as true."). Granting or denying a motion for default judgment is a matter
7 within the court's discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

8 In the present matter, default was entered by the clerk on July 2, 2013. *See* Dkt. No. 10.
9 Consequently, the factual allegations of the Government's complaint are deemed to be true and the
10 court is vested with the authority to enter default judgment. The decision whether to exercise its
11 discretion to do so is guided by two overlapping inquiries. First, the court considers the
12 Government's claims in light of the factors set forth by the Ninth Circuit in *Eitel*, 782 F.2d at
13 1471–72. Second, the court determines whether the Government has met the specific procedural
14 requirements governing forfeiture actions.

15 **C.** ***Eitel* Factors**

16 In *Eitel*, the Ninth Circuit set for the following factors which should be considered in
17 determining whether to grant or deny a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

21 *See Eitel*, 782 F.2d at 1471-72. The first factor supports granting default judgment because
22 denying the Motion would likely prejudice the United States by leaving it without a remedy. The
23 second and third factors also support granting default judgment, as the United States' allegations,
24 assumed to be true, show that the defendant funds are subject to forfeiture under 18 U.S.C. §
25 881(a)(6), as the funds were related to drug trafficking. The sum of money at stake ($128,760),
26 though substantial, is not so large as to warrant denial of the Motion. As discussed further below,
27 Mota and his attorney were properly served with the Complaint, Arrest Warrant and Notice of
28 Forfeiture Action, thus there is no indication of a possibility of dispute concerning material facts

or that the default was due to excusable neglect.

The remaining *Eitel* factors are neutral. Moreover, although there is a strong public policy favoring a decision on the merits, no party has filed a verified claim for the defendant funds, thus deciding the case on the merits is not possible. Therefore, the consideration of the *Eitel* factors as a whole weighs in favor of granting the Motion for Default Judgment.

### D. Compliance with Forfeiture Procedures

The Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules") govern judicial forfeitures of property. *United States v. 5145 N. Golden State Blvd.*, 135 F.3d 1312, 1315 (9th Cir. 1998). Under the Admiralty and Maritime Local Rule 6-1(a) for the Northern District of California, "[a] party seeking a default judgment in an action *in rem* must show that due notice of the action and arrest of the property has been given ... [t]hrough execution of process in accordance with Fed. R. Civ. P. Supp. G(3); and ... in accordance with Fed. R. Civ. P. Supp. G(4)." Admir. L.R. 6-1(a).

#### 1. *Supplemental Rule G(3)*

Supplemental Rule G(3) governs judicial authorization and process. Supplemental Rule G(3) provides that "the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control." Fed.R.Civ.P. Supp. G(3)(b)(i). In this case, a Warrant of Arrest of Property *In Rem* was issued on April 5, 2013. *See* Dkt. No. 3.

Supplemental Rule G(3) also states that "[t]he warrant and any supplemental process must be delivered to a person or organization authorized to execute it," including "someone under contract with the United States." The certificate of service states that Carolyn Jusay, a paralegal in the Asset Forfeiture Unit of the United States Attorney for the Northern District of California, served the relevant documents in this case via United States certified mail delivery upon the last known addresses of Mota and his attorney. *See* Dkt. No. 5 (Certificate of Service). Based on the foregoing, service was in compliance with Supplemental Rule G(3).

#### 2. *Supplemental Rule G(4)*

Supplemental Rule G(4) requires both notice by publication and notice to known potential claimants. *See* Fed.R.Civ.P. Supp. G(4)(a)-(b). First, with respect to notice by publication, Rule

1  G(4)(a) provides that "[a] judgment of forfeiture may be entered only if the government has
2  published notice of the action within a reasonable time after filing the complaint or at a time the
3  court orders," and requires that a published notice: "(A) describe the property with reasonable
4  particularity; (B) state the times under Rule G(5) to file a claim and to answer; and (C) name the
5  government attorney to be served with the claim and answer." Fed.R.Civ.P. G(4)(a)(i)-(ii). Rule
6  G(4) further provides the notice may be published by "posting a notice on an official internet
7  government forfeiture site for at least 30 consecutive days." Fed.R.Civ.P. Supp. G(4)(a)(iv).

8  To demonstrate compliance with the published notice requirement, the United States has
9  filed a "Declaration of Publication," which states that the United States published notice of the
10 action on an official government website (www.forfeiture.gov), where it remained for at least 30
11 consecutive days beginning April 10, 2013. *See* Dkt. No. 8. The published notice described the
12 property to be seized as "$128,760 U.S. Currency (13-DEA-575823) which was seized from Ariel
13 Mota on December 6, 2012 at San Francisco International Airport, located in San Francisco, CA."
14 *Id*. The published notice also noted that "[a]ny person claiming a legal interest in the Defendant
15 Property must file a verified Claim with the court within 60 days from the first date of publication
16 (April 10, 2013)," and named Assistant United States Attorney Patricia Kenney as the government
17 attorney to be served. This notice complies with the requirements of Supplemental Rule G(4)(a).

18 Next, with respect to notice to known potential claimants, Rule (G)(4)(b) requires the
19 government to "send notice of the action and a copy of the complaint to any person who
20 reasonably appears to be a potential claimant." Fed.R.Civ.P. Supp. G(4)(b)(i). The notice must
21 state "(A) the date when the notice is sent; (B) a deadline for filing a claim, at least 35 days after
22 the notice is sent; (C) that an answer or a motion under Rule 12 must be filed no later than 21 days
23 after filing the claim; and (D) the name of the government attorney to be served with the claim and
24 answer." *Id*. at G(4)(b)(ii).

25 The Notice of Forfeiture was served on Mota with the Complaint and Arrest Warrant. The
26 Notice of Forfeiture: (A) is dated April 5, 2013 and was served on April 9, 2013; (B) states that
27 the deadline for filing a claim is at least thirty-five days after the notice is sent; (C) states that an
28 answer to the complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure must

9

1 be filed within 21 days after filing a claim; and (D) identifies Assistant United States Attorney
2 Patricia J. Kenney as the government attorney to be served. Therefore, the United States has
3 demonstrated compliance with the requirements of Supplemental Rule G(4)(b).
4     Accordingly, notice by publication and notice to known potential claimants was in
5 compliance with Supplemental Rule G(4).

## IV. CONCLUSION

For the reasons stated above, the United States' Motion for Default Judgment is GRANTED.

IT IS SO ORDERED.

Dated: August 29, 2013

JOSEPH C. SPERO
United States Magistrate Judge